J-S36002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.V., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1369 EDA 2021 |

Appeal from the Order Entered June 7, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
7-2021-AD

| | | |
|---|---|---|
| IN THE INTEREST OF: K.V., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1370 EDA 2021 |

Appeal from the Order Entered June 7, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
8-2021-AD

BEFORE:   LAZARUS, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 11, 2022**

K.M. (Mother) appeals[1] from the orders, entered in the Court of Common

Pleas of Wayne County, involuntarily terminating Mother's parental rights to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] On August 10, 2021, our Court, *sua sponte*, consolidated these appeals at Nos. 1369 and 1370 EDA 2021, where these matters involve related parties and issues.  *See* Pa.R.A.P. 513.

her twin children, K.V. and K.V. (born August 2014) (collectively, Children). After careful review, we affirm.

On February 2, 2020, officers stopped a vehicle Mother was driving and in which Father[2] and Children were passengers. At the time of the stop, Father was under the influence;[3] Mother, who did not appear to be under the influence, admitted that she was a habitual drug user who was addicted to methamphetamine and cocaine. Children were not wearing seatbelts. Following a search of the vehicle, law enforcement discovered cocaine and methamphetamine in Mother's possession, as well as a crack pipe and a scale. Mother tested positive for cocaine and methamphetamines on February 3, 2020. On February 4, 2020, the police observed more drug paraphernalia during a search of Mother's home.[4] At that time, Children had missed approximately 20 days of school and, ultimately, had to repeat kindergarten. On February 4, 2020, the court entered an emergency protective custody order temporarily transferring custody of Children to Wayne County Children and Youth Services (CYS). On February 11, 2020, Mother tested positive for suboxone and marijuana. The court established a permanency plan and

_____

[2] Children's Father's parental rights were also involuntarily terminated. He has filed a separate appeal to this Court at Nos. 1202 EDA 2021 and 1371 EDA 2021.

[3] The police found Father in possession of marijuana and a crack pipe. N.T. Termination Hearing, 6/7/21, at 5.

[4] During their initial search of Parents' residence, police suspected a potential meth lab had been set up in the home. However, upon further investigation, it was determined not to be a meth lab.

objectives for Mother, including that she obtain a drug and alcohol evaluation, "follow any and all recommendations, sign releases for [CYS]," and enroll in a parenting program. Permanency Plan, 2/19/20, at 7. The court ordered supervised visitation between Mother and Children no less than twice per month.

Children were adjudicated dependent on February 20, 2020, and placed into a "resource home" in Honesdale, Pennsylvania. During Children's dependency, Mother attended numerous in-patient and out-patient drug and alcohol treatment programs. However, due to the COVID-19 pandemic, most visits between Mother and Children were held via Zoom.[5] Moreover, many of Mother's drug treatment sessions occurred as telehealth appointments. In February 2020, the court ordered Mother to receive a mental health evaluation. Mother failed to obtain the evaluation until more than one year later while she was incarcerated.[6]

On May 12, 2021, CYS filed petitions seeking to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8),

---

[5] A CYS caseworker testified that Mother participated in fifty-one visits (in-person, virtual and telephonic) out of a total ninety-six scheduled visits. N.T. Goal Change/Termination Hearing, 6/7/21, at 11.

[6] At the time of the termination hearing, Mother had been incarcerated since April 5, 2021. *Id.* at 16. A CYS caseworker testified that she believed Mother's anticipated date of release from incarceration was the end of June 2021. *Id.* at 27. Mother testified that she has been working in the jail's kitchen to receive time off of her sentence and also completed a parenting class while incarcerated. *Id.* at 53.

and (b). On June 7, 2021, the trial court held a goal change/termination hearing[7] at which Mother, Father, and CYS caseworker Sarah Hoger testified. Following the hearing, the court granted CYS' petitions and terminated Mother's and Father's parental rights pursuant to sections 2511(a)(1)-(4) and (b)[8] of the Adoption Act.[9] Mother filed, contemporaneously, a timely notice of appeal and Pa.R.A.P. 1925(a)(2) concise statement of errors complained of on appeal. Mother presents the following issues for our consideration:

> (1) Whether the [t]rial [c]ourt erred as a matter of law in determining that [termination of] the parental rights of [M]other was warranted[.]
>
> (2) Whether the [t]rial [c]ourt erred as a matter of law in determining that the termination of parental rights of [M]other was in the best interest of the subject minor child(ren)[.]
>
> (3) Whether the [t]rial [c]ourt erred as a matter of law in determining that [CYS] met [its] burden of proof in an involuntary termination of parental rights matter[.]

---

[7] Guardian *ad litem*, John Martin, II, Esquire, represented Children at the termination hearing.

[8] *See* 23 Pa.C.S. § 2511(b) ("Other considerations. — The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.").

[9] 23 Pa.C.S. §§ 2101-2938.

(4)     Whether the [t]rial [c]ourt erred in terminat[ing] parental rights when [Mother] was unable to comply with the family service plan due to the Covid-19 pandemic.

Appellant's Brief, at 7.

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law.  ***In re A.R.***, 837 A.2d 560, 563 (Pa. Super. 2003).  Our scope of review is limited to determining whether the trial court's order is supported by competent evidence.  ***Id.***

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.  The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."  It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

***In re Adoption of S.M.***, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted).  ***See also In re C.P.***, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

CYS deemed Mother to have "minimally" complied with her service plan objectives at the June 2020, September 2020, December 2020, March 2021, and June 2021 permanency hearings.   N.T. Goal Change/Termination

Hearing, 6/7/21, at 15. The court also deemed Mother's progress in alleviating the circumstances necessitating Children's placement as minimal or none at the same hearings. *Id.* at 16. Although Mother had attended an in-patient drug and alcohol treatment facility and began attending PATH Treatment and Healing courses, she relapsed and stopped attending sessions. The court concluded that Mother's relapse demonstrated "her inability to remain sober as the original [service] plan and objectives required." Pa.R.A.P. 1925(a) Statement of Reasons, 8/9/21, at 7. The court also considered the following facts: Mother never accepted assistance from caseworkers to help her comply with service objectives; Mother did not appear for several permanency hearings; and, at each of the in-person visits Mother attended, she tested positive for methamphetamines and amphetamines.

Mother testified at the termination hearing that before she could care for Children she needed another three to six months to secure stable housing[10] after she was released from incarceration. *Id.* at 62. Children had already been in placement for 15 months at that time. *Id.* at 20.

Due to Mother's inability to remain sober, failure to accept the addiction and mental health services offered to her by CYS, and her overall minimal-to-no compliance with her plan objectives, we conclude that there was clear and convincing evidence to terminate Mother's parental rights under section

---

[10] Mother had been living with maternal grandparents prior to her incarceration. Maternal grandparents were also addicted to drugs.

2511(a)(2).[11] **See** N.T. Goal Change/Termination Hearing, 6/7/21, at 75 (trial judge stating, "Months and months of addiction and mental health services were offered and declined on multiple occasions by both [Mother and Father]. . . . I cannot say that it is in [Children's] best interest for me to continue the process that has been on-going for the last fifteen months.").[12]

With regard to section 2511(b), we conclude that it was in the best interests of Children to terminate Mother's parental rights. Although a caseworker testified that a bond exists between Mother and Children, Mother's instability, inability to remain sober, and addictive behaviors make it impossible for her to provide Children with the permanency they so desperately need. **See Adoption of C.J.P.**, 114 A.3d 1046, 1054 (Pa. Super. 2015) ("A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.") (citation omitted). Moreover, Children have expressed that they love and want to stay with their resource family, an adoptive resource. Caseworkers testified that Children are doing well in school, Children have said that their resource home "is their new home now," and Children have a positive bond with their resource

_____

[11] **See** 23 Pa.C.S. § 2511(a)(2) ("The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.").

[12] We can affirm the trial court's decision regarding the termination of parental rights with regard to any single subsection of section 2511(a). **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

family. N.T. Termination Hearing, 6/7/21, at 8, 21; *id.* at 20 ("[Children] express love and affection toward [their resource family.] They tell the [resource family] frequently that they love them and want to stay with them."). Moreover, a caseworker testified that adoption could be achieved within three months. *See id.* at 18. The stability that Children are experiencing with their current resource family serves Children's safety needs and intangibles such as love, comfort, and security. *In re Adoption of C.D.R.*, 111 A.3d 1212 (Pa. Super. 2015). Accordingly, we conclude that there was clear and convincing evidence to terminate Mother's parental rights under section 2511(b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2022